WARNER *v.* DELBRIDGE & CAMERON CO.

1. FOREIGN CORPORATIONS—LIABILITY OF RESIDENT MEMBERS.
    One who becomes a member of a foreign corporation subjects himself to such laws of the government of its *situs* as affect its powers and obligations.

2. SAME—MUTUAL INSURANCE.
    Thus, an assessment against a Michigan member of a Minnesota mutual fire insurance company, who has contracted to pay for losses and expenses only, although including an item for unearned premiums on cash policies, which would invalidate the assessment if the contract were to be regarded as a Michigan contract (*Detroit, etc., Ins. Co.* v. *Merrill*, 101 Mich. 393), may be enforced in the courts of this State, since such an assessment is legal under the statutes of Minnesota, as interpreted by the courts of that State.

3. SAME—JUDGMENT—CONCLUSIVENESS.
    To what extent a judgment of a court of one State, providing for an assessment against the stockholders of an insolvent corporation, is conclusive upon the courts of another State,—*quære.*[1]

4. SAME—APPEAL—OBJECTIONS NOT RAISED BELOW.
    An objection that a foreign insurance company was not shown to have been authorized to do business within the State comes too late on appeal to prevent the enforcement of an assessment upon a premium note.

Error to Wayne; Donovan, J. Submitted June 11, 1896. Decided July 31, 1896.

[1] A note collating the authorities upon this subject will be found with this case, as reported in 34 L. R. A. 701.

*Assumpsit* by Willard E. Warner, ancillary receiver in Michigan of the Minneapolis Mutual Fire Insurance Company, against the Delbridge & Cameron Company, upon a premium note. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*C. E. Warner*, for appellant.

*Ed. E. Kane*, for appellee.

MONTGOMERY, J. On the 3d of April, 1890, defendant applied for and received a policy of insurance in the Minneapolis Mutual Fire Insurance Company, and executed and delivered the following agreement: ·

"MINNEAPOLIS, MINN., April 3, 1890.
"For value received, in policy No. 01,037, dated the 3d day of April, 1890, we promise to pay the Minneapolis Mutual Fire Insurance Company the sum of three hundred and seventy-five dollars, by installments, at such times as the directors of said company may order and assess, for the losses and expenses of said company, pursuant to its charter and by-laws. It is hereby expressly understood and agreed that this note is not transferable, and that there is no liability beyond the face amount thereof.
"No. 01,037.
"DELBRIDGE, CAMERON & DINGEMAN CO."

On the 18th of December, 1890, an application was made by a policy holder, in the district court of Hennepin county, Minn., alleging the insolvency of the company, and praying for the appointment of a receiver, and the distribution of its assets among the creditors entitled thereto. On the 24th of January, 1891, a decree passed adjudging the insurance company insolvent, and appointing a receiver. On the 19th of May following, an order making an assessment of 50 per cent. upon all premium notes and policy obligations was made; but this order was subsequently set aside as illegal, and a petition was filed showing the financial condition of the company, and the neces-

sity for an assessment; and February 3, 1894, an order was made authorizing an assessment of 100 per cent., or as much thereof as might be necessary to pay the claims which accrued against the said insolvent company during the time said policies were in force, to be levied upon the balance due upon each and all of said premium notes and policy obligations at the time of the appointment of a receiver for the insolvent company, in 1890. This order further directed that upon this assessment the receiver should credit and deduct the amount of any special assessment theretofore made by the insurance company, and actually paid by the makers of the premium notes and policy obligations, and also the amount actually paid upon the assessment of 50 per cent. theretofore ordered by the court. The items included in this assessment of 100 per cent. were for losses, salaries, *unearned premiums on cash policies*, and miscellaneous claims. On the application of the complainant in the original suit, made to the circuit court for the county of Wayne, in chancery, setting forth the proceedings in Minnesota, plaintiff was appointed an ancillary receiver in the State of Michigan. This suit was brought against the defendant to recover, upon the premium note mentioned, the 100 per cent. assessment. On the trial, the circuit judge directed a verdict for defendant, on the ground that the assessment was void, for the reason that it included an assessment for unearned premiums; acting upon the authority of *Detroit, etc., Ins. Co.* v. *Merrill,* 101 Mich. 393.

If this contract is to be treated as a Michigan contract, the holding should be sustained, unless it be held that the order making the assessment, made at the *situs* of the home company, is conclusive, not only as to the authority to make the assessment, but as to the extent of the defendant's liability. This question was recently before the court in the case of *Mutual Fire Ins. Co.* v. *Phœnix Furniture Co.*, 108 Mich. 170, and the conclusion was then reached that the decision of the court of a sister State is binding upon the courts of this State in all these

respects. This conclusion was based upon the constitutional provision that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. U. S. Const. art. 4, § 1. And an examination of the decisions of the Federal Supreme Court led us to the conclusion that the stockholder of a corporation is so far an integral part of the corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member, and that a determination that an assessment upon the policy holders in a certain amount and for certain obligations of the company should be made was final and conclusive, and could not be attacked collaterally when suit was brought upon such assessment in another State. In reaching this conclusion, the question involved being a federal question, we felt ourselves bound by the determination of the Federal Supreme Court in *Hawkins* v. *Glenn,* 131 U. S. 319, and *Glenn* v. *Liggett,* 135 U. S. 533. But since the decision of this court in *Mutual Fire Ins. Co.* v. *Phœnix Furniture Co.* the question has been again before the Federal Supreme Court, and the doctrine of the cases upon which we relied for our decision limited; and in *Great Western Tel. Co.* v. *Purdy,* 162 U. S. 329, it is held that an order making a call or assessment upon all stockholders of a corporation who have not paid their shares in full is merely such a call as the directors might have made before the matter was brought within the court's jurisdiction, and is not a judgment against the particular stockholder, so as to be entitled to such full faith and credit under the Constitution and laws of the United States, and that in such action defendant is entitled to rely on any defense which he might have to an action upon the contract of subscription.

Plaintiff, however, contends that this is a Minnesota contract, and that under the statute of Minnesota, as interpreted by the supreme court of that State, an assess-

ment for unearned premiums upon nonparticipating policies was legal. The contract by which the insured became a member included, not only the note, but the policy, which contained the following provision:

"The insured heretofore named becomes a member of this company, and agrees to pay them the premium annually, during the life of this policy, and, in addition thereto, such sum or sums, in no event to exceed in the aggregate five times the amount of said annual premium, at such time or times, and in such manner, and by such installments, as the directors of said company shall assess and order, pursuant to its charter and by-laws and the laws of the State of Michigan."

It is suggested by defendant's counsel that it is only for assessments for losses and expenses made according to the laws of Michigan that the defendant is made liable by its contract. It is difficult to understand the reference to the laws of the State of Michigan. This was certainly known by both parties to be a Minnesota corporation, and we are aware of no provision of the laws of this State which relates to the assessments authorized by such corporation. We think, therefore, that the contract must be treated as a Minnesota contract. Every corporation necessarily carries its charter wherever it goes; and, while it may be restricted in the use of some of its powers while doing business away from its corporate home, every person who deals with it everywhere, and particularly one who becomes a member of the corporation, is bound to take notice of the provisions which have been made in its charter, and subjects himself to such laws of the government of its *situs* as affect the powers and obligations of the corporation. See *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 537; *Relfe* v. *Rundle,* 103 U. S. 225.

The statute of Minnesota under which this company was organized authorized the company to engage in business and to receive premium notes, and provides that—

"Every person effecting insurance in any company organized under this act, and the heirs, executors, and assigns of such person continuing to be so insured, shall thereby become members of such corporation during the period of insurance, and shall be bound to pay for losses and such necessary expenses as may accrue in the management of such company, in proportion to the amount of such premium note." Gen. Stat. 1894, § 3261.

And in another section it is provided that whenever the capital stock of any company shall amount to the sum of $200,000, of which amount not less than $40,000 shall be actual funds, such company may assume risks on the "all-cash" plan, and issue policies against loss or damage by fire or lightning to an amount not exceeding 5 per cent. of its capital. Id. § 3264. This statute has been construed by the supreme court of Minnesota in the case of *In re Minneapolis Mut. Fire Ins. Co.*, 49 Minn. 291, in which the court say:

"This construction of the statutes and of the contracts under consideration leads also to the conclusion that the premium notes of the members of the corporation, which constitute its 'contingent fund,' may be resorted to, if necessary, to pay the unearned premiums on policies of simple (not mutual) insurance, whose holders sustain no other relation to the corporation than that of parties who had thus contracted with it. Such notes constitute a part of the 'capital' of the corporation, and comprise a part of the 'capital' required by the act of 1885 to be held by the company as a condition of its right to engage in this kind of insurance. They are to be deemed a part of the fund upon the credit of which such contracts of insurance are entered into."

It is to be noted that in *Detroit, etc., Ins. Co. v. Merrill, supra*, the policy was a policy upon the mutual plan, and the unearned premiums were unearned premiums on mutual policies. We think the statute of Minnesota, as construed by the supreme court of that State, must be deemed to be the law of the contract between the parties to this engagement, and that, under this law, an assess-

ment for unearned premiums upon cash policies is within the contract.

These considerations would dispose of the case were it not that defendant's counsel contends that, even if the court was in error upon this question, the plaintiff failed to make a case. We have examined the points suggested by counsel, and deem it unnecessary to discuss them at length.

We think the construction of the order appointing plaintiff receiver which counsel makes is too technical. Plaintiff was appointed receiver of all equitable interests and choses in action, and of all property and assets, whether therein designated or not, belonging to said defendant corporation within the State of Michigan, and of all books, papers, property, and documents, of any and every description, belonging to said defendant, and with full power and authority to sue in his own name as such receiver, or in the name of defendant corporation, for all assets, money, or property and obligations due from residents of the State of Michigan to the defendant.

The suggestion that it was not proved that the foreign insurance company had authority to do business in the State of Michigan is made for the first time in this court, and, we think, should not control the decision.

As to the contention that the premium note was obtained by fraud, this contention is based upon certain papers which were found in the safe of the defendant company by a witness who personally knew nothing of their origin; and there was no evidence to show the manner in which they came into the possession of the defendant, nor was their execution or authenticity proven. Under these circumstances, we are certainly not in a position to say that fraud was conclusively proven.

We think the judgment should be reversed, and a new trial ordered.

LONG, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.